IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| AIRLYN POWELL,<br>  Plaintiff,<br><br>v.<br><br>OFFICER NICHOLAS PAULEY, *et al.*,<br>  Defendants. | Case No. 4:15-cv-04013-SLD-JEH |

**Order**

  Now before the Court is Defendant City of Rock Island's Motion for Severance and Stay of Discovery on Plaintiff's *Monell* Claim Against Defendant, City of Rock Island (Doc. 33). The Plaintiff filed a Response (Doc. 35) and for the reasons set forth below, Defendant City of Rock Island's Motion for Severance and Stay of Discovery on Plaintiff's *Monell* Claim Against Defendant, City of Rock Island is GRANTED.

**I**

  The Plaintiff filed her Complaint on February 15, 2015 alleging excessive force, failure to intervene, and violation of Equal Protection against all of the Defendants. Specifically, the Plaintiff alleged that Defendant Pauley began trailing her through a predominantly African-American neighborhood and without probable cause, stopped the Plaintiff's car and searched it. The Plaintiff alleged that after Defendant Pauley told her she was free to go and after she asked Pauley for his badge number, Defendant Cary grabbed her neck and waist from behind and tackled her to the ground and sprayed pepper spray in her face. She alleged that one or more of the Defendant officers had reasonable

1

opportunities to prevent and/or stop some of the violations of her constitutional rights but stood by and failed to take any action. The Plaintiff alleged she was thereafter falsely arrested, charged, and jailed.

The Plaintiff further alleged that the Defendant officers' unlawful conduct toward her was directly caused by the Rock Island Police Department and the City of Rock Island's (City) policies, widespread practices, and customs (the *Monell* claim).[1] In particular, the Plaintiff alleged that: the City has a pervasive practice and custom of failing to adequately train, supervise, control, discipline, and dismiss its officers concerning the use of excessive force; the City's police officers have engaged in and continue to engage in a pattern of using unreasonable and/or excessive force similar to that used against the Plaintiff; the City has persistently failed to respond; and the Defendant officers' conduct was undertaken pursuant to and as the direct result of the City's pervasive, long-standing practice and custom of condoning and authorizing the City's Police Department's pattern and practice of sending white officers and/or all-white teams of officers into predominantly African-American or minority neighborhoods which the Police Department knows or reasonably should know, increases racial tensions and community distrust.

On September 24, 2015, Defendant City filed its Motion for Severance. In support of its Motion, Defendant City requests that the Court should bifurcate the case and enter an order severing the Plaintiff's *Monell* claim against Defendant City from the claims against the individual officers, while staying discovery on the *Monell* claim until there has been a determination on the underlying claims against Defendants Rock Island Police Officers Nicholas

---

[1] In *Monell v. Dep't. of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978), the Supreme Court held that "[l]ocal governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."

Pauley, Jonathan Cary, and Ryan DeRudder (individual Defendant police officers).

## II

Federal Rule of Civil Procedure 42(b) states, in relevant part, "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Federal Rule of Civil Procedure 42(b) permits separation where the court determines that separate trials would avoid prejudice to a party or promote judicial economy. *Houseman v. U.S. Aviation Underwriters*, 171 F.3d 1117, 1121 (7th Cir. 1999). Only one of those criteria must be met for a court to order separation. *Id*. It is fairly common in cases involving *Monell* claims for the parties to request pursuant to Federal Rule of Civil Procedure 42(b) that the claims against a municipality be severed from claims against the individual defendants and that *Monell* litigation be stayed until the rest of the case is resolved. *See Allison v. Gallagher*, No. 10 C 6887, 2012 WL 4760863, at *1 (N.D. Ill. Oct. 5, 2012) (discussing how motions to bifurcate *Monell* claims are now commonplace and discussing the "spate of bifurcation motions and the willingness of many judges to grant them").

Defendant City first argues that if the individual Defendant police officers were found not liable for excessive force and failure to intervene, but the City were found liable under *Monell*, an inconsistent verdict would result. The Plaintiff, however, argues that each of the individual Defendant police officers in this case has pled the affirmative defense of qualified immunity and thus, if the Plaintiff prevails on her claims of constitutional injury but any or all of the individual Defendant police officers are found not liable due to qualified immunity, the Plaintiff may still recover against the City without creating an inconsistent verdict.

3

"[A] municipality can be held liable under *Monell*, even when its officers are not, unless such a finding would create an *inconsistent* verdict." *Thomas v. Cook Cnty. Sheriff's Dep't.*, 604 F.3d 293, 305 (7th Cir. 2009) (emphasis supplied), *citing City of Los Angeles v. Heller*, 475 U.S. 796, 798-99 (1986). An inconsistent verdict would result where individual officers are found not liable due to there being no constitutional violation, yet finding the City liable under *Monell*. On the other hand, a jury could find the individual Defendants committed a constitutional violation, but nevertheless find that the individual officers were not liable due to qualified immunity. In such a case, there would be no inconsistent verdict in finding the Defendant City liable under *Monell*, notwithstanding the lack of liability on the part of individual officers, because the jury would have found a constitutional violation. The individual Defendants' lack of liability in that scenario would only result from the qualified immunity defense. Such verdicts would not be inconsistent. Thus, to determine whether there exists a risk of an inconsistent verdict, the court must consider: 1) the nature of the constitutional violation; 2) the theory of municipal liability; and 3) the defenses set forth. *Id*.

Courts have recognized that the probability of succeeding on a qualified immunity defense in an excessive force case is low. It is not impossible, though highly unlikely, that the defense of qualified immunity will succeed in an excessive force case. In *Grant ex. rel. Estate of Ware v. City of Chicago*, the District Court explained that it was at a loss to imagine how the plaintiff could lose his claim against a police officer based on qualified immunity but still recover against the municipality where the facts alleged clearly stated a claim for excessive force, and the right to be free from excessive force was clearly established. No. 04 C 2612, 2006 WL 328265, *at 3 n. 2 (N.D. Ill. Feb. 10, 2006); *see also Carr v. City of North Chicago*, 908 F. Supp.2d 926, 931 (N.D. Ill. 2012)

("[D]efendants are not likely to prevail on a qualified immunity defense in the context of excessive force allegations"). A District Court in the Northern District of Illinois put it plainly that "the likelihood of a defendant prevailing on that defense in the context of an excessive force claim has not been a persuasive argument against bifurcation." *Elrod v. City of Chicago*, Nos. 06 C 2505, 07 C 203, 2007 WL 3241352, at *5 (N.D. Ill. Nov. 1, 2007). Here, the crux of the Plaintiff's case is that excessive force was used against her in violation of her constitutional rights, and the individual police officers defend against that claim with qualified immunity. Therefore, this case presents the same circumstances as those in which the courts have held that a qualified immunity defense to an excessive force claim is unlikely to succeed. Though the Defendants assert they are entitled to qualified immunity for all of the Plaintiff's claims, not just her excessive force claim, notably, a claim of failure to intervene is so closely linked to a claim of excessive force that, by definition, if there is no excessive force then there can be no failure to intervene. *Abdullahi v. City of Madison*, 423 F.3d 763, 767 (7th Cir. 2005).

Thus, this case presents the typical case in which bifurcation is appropriate to avoid inconsistent verdicts. Considering the nature of the constitutional violations alleged and the theory of municipal liability propounded, a verdict finding the individual officers not liable would likely be *inconsistent* with a verdict finding the City liable. The possibility of finding the officers not liable due solely to the qualified immunity defense is remote where they are alleged to have grabbed the Plaintiff by her neck and waist from behind and tackled her to the ground and sprayed pepper spray in her face after they told her she was free to go. The more likely scenario would be a finding of no liability because a constitutional violation was not proven. See *Carr*, 908 F. Supp. 2d at 930 (stating that a "predicate to recovery under *Monell* is, of course, a constitutional injury"

and explaining that if there was no excessive force, the plaintiff did not suffer any injury to his constitutional rights and if he did not, there was no constitutional harm for which the municipality could be liable). Just as this court in *Dickerson v. City of Rock Island*, 4:13-cv-04003 (C.D. Ill. September 10, 2015), determined, this scenario of finding the Defendant City liable in this case under *Monell* while finding the individual Defendant police officers not liable for excessive force would create an inconsistent verdict, at least insofar as the Plaintiff alleges City liability based upon failure to train. *See Sallenger v. City of Springfield*, 630 F.3d 499, 504 (7th Cir. 2010) ("a municipality cannot be liable under *Monell* when there is no underlying constitutional violation by a municipal employee"), *citing Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007) ("there can be no liability under *Monell* for failure to train when there has been no violation of the plaintiff's constitutional rights").

Next, Defendant City argues that presenting evidence of an alleged City wide policy, practice, or custom involving multiple improper police actions would prejudice the individual Defendant police officers by creating a perception that the police department routinely acts improperly even if the individual Defendants acted properly in this case. The Plaintiff counters that an order granting the City's Motion for Severance would prejudice her by effectively barring her from pursuing her *Monell* claims. She argues that if she were to prevail against any or all of the individual Defendant police officers, the City would simply pay the compensatory damages and attorneys' fees, depriving her of non-economic incentives as well as costs which are not accounted for in the City's proposed Stipulation to Entry of Judgment against Defendant City of Rock Island.[2] She further argues that speculative prejudice to

---

[2] Defendant City's proposed Stipulation provides, in part, that it "agrees to entry of judgment against City of Rock Island for compensatory damages and, to the extent allowed by the Court, reasonable

the individual Defendants is not enough to compel bifurcation, and the possibility of prejudice could be easily dealt with by the Court at the time of trial.

Just as this Court did in *Dickerson*, and for the same reasons, the Court here rejects the Plaintiff's argument that bifurcation would deprive her of non-economic incentives as well as costs as a basis to deny the Motion for Severance and Stay. The Plaintiff identifies one thing as a "non-economic incentive" – the deterrence of future misconduct. To bolster her argument that the public interest in preventing or reducing future violations (a.k.a. non-economic incentive) is great in this case, the Plaintiff re-alleges the particulars of her excessive force claim as it pertains to Defendant Cary. She also points to another alleged incident involving the use of excessive force, that time by Defendant DeRudder, against another individual (Darren Langford) which allegedly ultimately resulted in Langford's death. The Plaintiff argues that in light of these incidents, it is clear that the Rock Island Police Department's failure to train and discipline its officers has long-lasting and tragic effects on the community and so there must be an adjudication of the *Monell* claim in this case.

Non-economic incentives, however, often result from damages awards. The Supreme Court has made that fact clear. In *Owen v. City of Independence*, the Supreme Court explained, "A damages remedy against the offending party is a vital component of any scheme for vindicating cherished constitutional guarantees . . . . " 445 U.S. 622, 650 (1980); *see also Carr*, 908 F. Supp. 2d at 935 ("Since the City will be paying any compensatory damages, the City may feel an incentive to change"), *citing Parker v. Banner*, 479 F. Supp. 2d 827, 829 (N.D. Ill. 2007). Moreover, the Plaintiff places undue emphasis upon the other alleged

---

attorney's fees pursuant to 42 U.S.C. §1988, if and only if the finder of fact in this case finds that any City employee violated Plaintiff's constitutional rights as alleged in her Complaint." (Doc. 33 at pgs. 10-11).

incident she identified involving Darrin Langford and Defendant Officer DeRudder. Langford's estate is currently pursuing a separate case for that alleged incident, and so granting bifurcation in this case does not foreclose the deterrence of future misconduct that may result from the parties litigating that other case. Also, nothing in the Stipulation precludes the Plaintiff from attempting to obtain costs. Ultimately, the Court finds that without bifurcation, the *Monell* claim against the City would so permeate the entirety of the case such that prejudice to the other Defendants would result.

Finally, Defendant City argues that the sheer amount of discovery sought and the time the City needs to complete the voluminous discovery requests would create delays, and so bifurcation and stay of discovery would be appropriate to prevent delays that could otherwise be avoided. The Plaintiff counters that judicial economy will not only not be served simply by delaying discovery and trial on her *Monell* claims, but bifurcation would strain more judicial resources where the parties would need to conduct two rounds of discovery and two trials.

The Court is aware of the risk that in ordering bifurcation at this point, a round of discovery on the Plaintiff's *Monell* claims and the need for a separate trial on her *Monell* claims may be necessary at a later time. However, the decision to bifurcate remains a matter of *discretion* for the Court, and here the Court finds that exercising its discretion in favor of bifurcation at this stage of the litigation will best serve the interests of judicial economy as well as the other considerations discussed above. *See Medina v. City of Chicago*, 100 F. Supp. 2d 893, 894 (N.D. Ill. 2000) (stating that there was no question that a district court has the discretion to sever a *Monell* claim and identifying the "number of advantages" to bifurcation while also noting bifurcation was not a win-win solution).

### III

For the reasons stated above, the Defendant City of Rock Island's Motion for Severance and Stay of Discovery on Plaintiff's *Monell* Claim Against Defendant, City of Rock Island (Doc. 33) is GRANTED. The Plaintiff's *Monell* claim against Defendant City is severed from the claims against the individual Defendant police officers. Discovery on the *Monell* claim is stayed until there has been a determination on the underlying claims against the individual Defendants.

*It is so ordered.*

Entered on November 10, 2015.

<u>s/Jonathan E. Hawley</u>
U.S. MAGISTRATE JUDGE